```
                     UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MISSOURI
                           EASTERN DIVISION


UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
     v.                        )     No. 4:07 CR 17 SNL
                               )                     DDN
ROBERT EARL HURST,             )
                               )
          Defendant.           )
```

## ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This action is before the court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on March 2, 2007.

Defendant Robert Earl Hurst has moved to suppress evidence and statements (Doc. 20 and oral motion filed February 6, 2007), and the government has orally moved for a hearing on suppression issues (filed February 6, 2007). From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

### FACTS

1. On September 17, 2006, St. Louis Police Officers David Nerviani and Thomas Mayer were on normal uniformed patrol in a marked police car in the 7th District of the City of St. Louis. At about 1:42 a.m., as they drove westbound on the 5500 block of St. Louis Avenue, near the intersection with Belt Avenue, Officer Nerviani saw a blue pickup truck turn left onto St. Louis Avenue and head westbound in front of the police car. Officer Nerviani immediately saw that the pickup truck's license plate, which was issued by the State of Illinois, was expired. He activated the car's emergency lights to stop the pickup truck. The driver of the pickup truck complied and stopped the truck within one-half block of the lights being activated. Officer Nerviani, the driver of the police car, parked immediately behind the truck. He shined the police spotlight onto the left side rear view mirror of the

truck, to light up its interior.  There were two occupants of the truck, the driver and a passenger.  Officer Mayer notified the dispatcher by radio about the stop and requested information about the license plate. He also asked that the police supervisor who was involved with investigating a recent burglary of a nearby Sears retail store come to the scene.[1]  Officer Nerviani then got out of the driver's side of the police car and Officer Mayer stepped out of the passenger's side.

	2.	Both officers walked up their sides of the truck.  Officer Nerviani carried his flashlight.  Officer Mayer's attention was directed at the person seated in the truck's passenger seat.  Neither officer drew a weapon.  As they approached the back of the truck, Officer Nerviani saw the driver lean out of the driver's door window, twist toward the back of the truck, and with his right hand throw a black object into the bed of the pickup.  When the object hit the floor of the pickup bed, the officers heard a heavy thud noise.  Officer Nerviani got Officer Mayer's attention and pointed to the pickup bed.  In the bed of the truck there were an old auto tire and other miscellaneous items. As Officer Nerviani walked past the bed of the truck to the cab, he briefly aimed his flashlight into the truck bed and saw a black bag.

	3.	When Officer Nerviani got to the driver's window he asked the driver for his license and insurance record.  The driver, later identified as defendant Robert Earl Hurst, without being asked any question, said "I'm on federal paper."

	4.	Officer Nerviani then took the license and asked, "What does that have to do with the license and what did you throw?"  Hurst said, "I'm not going to lie.  There is a gun in the bag.  That's why I threw it."  Officer Nerviani told Hurst to stay where he was.

	5.	At that time, Officer Nerviani found a black zippered insulated bag in the truck bed, took the bag out of the truck bed, and opened it.  He looked inside it and found a firearm which he showed to

---

[1]Defendant argues that the officers stopped his truck not because of a problem with the license plate but because they suspected defendant might be involved in the Sears store burglary.  The undersigned credits the officers' testimony about the reason for stopping the truck, i.e., that the license plate had expired.

Officer Mayer.  At that time Officer Nerviani had Hurst step out of the truck.

  6. As soon as Hurst was outside the truck, Officer Nerviani arrested him for the unlawful use of a weapon.  He then advised him of his constitutional rights to remain silent and to counsel, reading them to him from a card.  When he finished, Nerviani asked Hurst whether he understood his rights.  Hurst said he did.  Hurst did not appear to be intoxicated by drugs or alcohol.  Without being asked any questions, Hurst said, "I live on a shitty block.  That is why I carry the gun."  At that time Hurst was taken to the police station.  At all times after the traffic stop, both Hurst and the passenger were cooperative with the police officers.

### **DISCUSSION**

 The motion to suppress evidence should be denied.  At the outset, the officers were authorized to stop the truck without a warrant, because they saw it being operated in violation of the law, with an expired license plate.  See Whren v. United States, 517 U.S. 806, 813-14 (1996); United States v. Cortez-Palomino, 438 F.3d 910, 912-13 (8th Cir. 2006).

 The Fourth Amendment authorizes an officer conducting a routine traffic stop to check the driver's identification and vehicle registration, ask the driver to step out of his vehicle and over to the patrol car, inquire into the driver's destination and purpose for the trip, and undertake similar questioning of the vehicle's occupants to verify the information provided by the driver.  See Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977); United States v. Sanchez, 417 F.3d 971, 975 (8th Cir. 2005).  Thus, Officer Nerviani lawfully asked defendant for his driver's license and insurance papers.

 Regardless of whether defendant was then in custody for the purposes of Miranda v. Arizona, 384 U.S. 436 (1966), and the undersigned concludes he was not, without being asked any question, defendant spontaneously made the idiomatic statement, "I'm on federal paper" (Finding 3), indicating that he was then on federal post-conviction release supervision (Finding 3).  This statement is admissible without

defendant having been advised of his constitutional rights to counsel and to remain silent, because he did not make the statement in response to police interrogation. United States v. Hawkins, 102 F.3d 973, 975 (8th Cir. 1996).

The statement made by defendant about a gun being in the bag (Finding 4) should not be suppressed. Although it was made in response to police interrogation, it was not made at a time when defendant was in custody for Miranda purposes. Ordinary traffic stops are not considered sufficiently coercive in nature to require that persons who are temporarily detained during a traffic stop be considered "in custody" for the purposes of Miranda. Berkemer v. McCarty, 468 U.S. 420, 439-40 (1984); United States v. Pelayo-Ruelas, 345 F.3d 589, 592 (8th Cir. 2003).

Officer Nerviani left the topic of the basis for the traffic stop when he asked defendant what he had thrown into the bed of the truck. However, an officer lawfully may exceed the original traffic law purpose of the stop by engaging in other investigative activities, such as questioning or asking permission to search, where these further investigative activities are supported by a reasonable suspicion of wrongdoing based upon articulable facts. Terry v. Ohio, 392 U.S. 1 (1968); United States v. Sokolow, 490 U.S. 1, 7 (1989); United States v. Pulliam, 265 F.3d 736, 740 (8th Cir. 2001); United States v. Ramos, 42 F.3d 1160, 1166 (8th Cir. 1994). Further, because defendant's act of throwing an object, heavy enough to make a substantial noise when it hit the bed of the pickup truck, immediately before the officers arrived at the cab of the truck, could have involved the hiding of evidence or of a weapon, thus creating constitutionally exigent circumstances, Officer Nerviani lawfully asked defendant about the object. Ker v. California, 374 U.S. 23, 41-42 (1963).

The seizure of the black bag and the firearm inside it was lawful, even though warrantless. This is because, as soon as defendant said the object he threw was a weapon, after having said in effect that he was on federal supervision, the officers had probable cause to believe the item was contraband and it could be seized without a warrant because the motor vehicle was mobile and in a public area. Pennsylvania v. Labron, 518 U.S. 938, 940 (1996).

The statement made by defendant, after being advised of his Miranda rights and understanding those rights, about why he had the gun (Finding 6), should not be suppressed, because the statement was spontaneous and not coerced in any way. None of the statements defendant made to the officers on September 17 were involuntary. Statements are constitutionally involuntary if they are the result of government overreaching, such as mental or physical coercion, deception, or intimidation. Colorado v. Connelly, 479 U.S. 157, 169-70 (1986); Moran v. Burbine, 475 U.S. 412, 421 (1986); United States v. Jordan, 150 F.3d 895, 898 (8th Cir. 1998).

Whereupon,

**IT IS HEREBY ORDERED** that the oral motion of the government for a hearing on suppression issues (filed February 6, 2007) is denied as moot.

**IT IS HEREBY RECOMMENDED** that the motions of defendant to suppress evidence and statements (Doc. 20 and oral motion filed February 6, 2007) be denied.

The parties are advised they have until March 26, 2007,[2] to file written objections to this Order and Recommendation. The failure to file objections may result in a waiver of the right to appeal issues of fact.

/S/ David D. Noce
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 13, 2007.

---

[2] This is 11 calendar days from March 13, 2007. See Federal Rule of Criminal Procedure 45(a)(2).